523 P.2d 84

**In the Matter of the Appeal in MARICOPA COUNTY, JUVENILE ACTION NO. J-72918-S.**

**No. I CA-JUV 15.**

Court of Appeals of Arizona,
Division 1,
Department A.

June 13, 1974.

Ross P. Lee, Public Defender, by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

Moise E. Berger, Co. Atty., by C. O. Lamp, Deputy Co. Atty., Phoenix, for appellee.

OPINION

DONOFRIO, Presiding Judge.

This is an appeal under the Juvenile Court Rules of Procedure, Rules 24 through 28, 17A A.R.S., from an order of the Juvenile Court of Maricopa County entered November 28, 1973, revoking probation and committing the appellant to the Arizona Department of Corrections.

As background, on February 15, 1972 a petition alleging five counts of delinquent acts involving offenses of glue and aerosol paint sniffing, appearance in a public place under the influence of their toxic vapors, and destruction of property (setting fire to trash), was filed against appellant herein. He appeared with his mother before the Juvenile Court referee who informed him and his mother of the charges alleged in the petition and of their constitutional rights in the matter. Thereafter the juvenile admitted all the counts of the petition. The referee adjudged him a delinquent child, made him a ward of the court, and placed him on probation under the protective supervision of the Juvenile Probation Office under the care of his parents and under the standard terms of probation which were set forth in an exhibit. There was no appeal from the referee's order and it was routinely approved by the Juvenile Court Judge. Thereafter, on November 24, 1972 a three-count petition, again involving glue sniffing, appearance in a public place under the influence of sniffing, and entering private property and raising the hood of a motor car (trespassing), was filed.

This petition was processed, the juvenile admitting Counts I and II (Count III dismissed), and he was continued on probation. Then on February 2, 1973 a new petition alleging glue sniffing was signed. Upon his admission of the charge, a finding of delinquency was made and the matter was assigned to a probation officer pending disposition. Thereafter the court continued him on probation.

The instant appeal arises from a supplemental petition filed October 22, 1973 alleging possession of a motor vehicle while knowing, or having reason to know or believe, it had been stolen. This petition alleged that the offense charged was in violation of the terms of his probation. A hearing to determine violation of probation, at which the juvenile's father was present, was held. The Judge found that the allegations of the petition were true and that the appellant was in violation of the terms of his probation and committed him to the State Department of Corrections. This appeal followed.

Appellant originally listed two grounds of appeal, namely:

1. The court did not find delinquency beyond a reasonable doubt, and

2. There is no evidence to support a finding of possession of a stolen motor vehicle knowing it to be stolen.

By supplemental brief two additional grounds were added which raised questions regarding the admission of statements by the juvenile when he had not been given proper warnings and that the court should have held a hearing and determined whether the statements were voluntary.

■ We first consider grounds 1 and 2. Under ground 1 appellant argues two issues; first, that the Juvenile Court had no jurisdiction to commit a child to the Department of Corrections on the basis of a previous adjudication of delinquency in which a disposition of the child had already been made; second, that in order for the court to make a different or new disposition the evidence must show the commission of the new offense charged beyond a reasonable doubt even though it be the basis of a revocation of probation.

That the court has jurisdiction to commit a child to the Department of Corrections for violation of probation on the basis of a previous adjudication of delinquency has been decided by this Court in In the Matter of the Appeal in Maricopa County, Juvenile Action No. J–72752, 21 Ariz.App. 414, 520 P.2d 327 (1974). We need only reiterate that the so-called prior "disposition" was the placing of the juvenile on probation and does not preclude the revocation of that probation.

The basic philosophy of juvenile court handling is individualized justice and treatment and the calling upon the multitude of sciences and services to assist the court in effecting a correction of the child's problems. The value of probation in this regard is unquestioned. As we stated in Juvenile J–72752, supra: "If there was an absence of a probation system each child found to be 'a delinquent or incorrigible child' [A.R.S. § 8–241(A)(2)] would have to be released with no corrective supervision or confined to an institution for juveniles." 520 P.2d at 329.

We hold therefore that a court is not prevented from placing a juvenile on probation and thereafter revoking probation for valid reasons. The court may then make a different disposition so long as it is within the law.

■ We next consider the second part of the first ground which deals with the quantum of proof necessary in this case to revoke probation. In re Winship, 397 U. S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), stands for the proposition that proof beyond a reasonable doubt is required during the adjudicatory stage when a juvenile is charged with the commission of a delinquent act which is defined as a criminal offense. Such is the situation in the instant case. The juvenile was charged by a petition which alleged the violation of the criminal statute, A.R.S. § 28–1423, which is a delinquent act. Rule 10 of the Juvenile Court Rules of Proce-

dure provides that proceedings for revocation of probation shall be initiated and processed under the general rules as provided for in delinquency actions. This procedure was followed here. The petition alleged a violation of probation, by the commission of a delinquent act which was regularly set for an adjudicatory hearing. Rule 17(a)(1) of the rules provides that the quantum of proof in delinquency matters is beyond a reasonable doubt. By the nature of the petition this is a delinquency matter.

As we read Winship if the adjudication relates to a petition alleging a criminal offense, i. e., a charge of delinquency, proof of the criminal charge beyond a reasonable doubt is constitutionally required. See also, In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The court speaks of an adjudication of a delinquency proceeding. There can be little question that the hearing on the instant petition was a hearing to determine whether a delinquent act was committed. The first delinquency petition filed in February 1972 was to give the Juvenile Court jurisdiction over the juvenile. The last petition was for the purpose of revoking probation. Whether it be the basis of obtaining jurisdiction of the juvenile in the first place, or is the basis of a revocation of probation, it is nevertheless an adjudication of a petition alleging a delinquent act within the meaning of Rule 17(a)(1).

The court in Winship was determining the adjudicatory stage of a delinquency proceeding when holding that proof beyond a reasonable doubt is required. Justice Brennan, in the beginning of the majority opinion, stated:

"  *  *  * This case presents the single, narrow question whether proof beyond a reasonable doubt is among the 'essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." 397 U.S. at 359, 90 S.Ct. at 1070.

The court answered the question in the affirmative, doing considerable research into the history of the rule requiring proof beyond a reasonable doubt in criminal cases. In this connection we note some of the reasoning of the court:

"The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt. *  *  * 397 U.S. at 363, 364, 91 S.Ct. at 1072.

*       *       *       *       *       *

"We turn to the question whether juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt when they are charged with violation of a criminal law. The same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child. *  *  * 397 U.S. at 365, 90 S.Ct. at 1073.

*       *       *       *       *       *

" *  *  * It is true, of course, that the juvenile may be engaging in a general course of conduct inimical to his welfare that calls for judicial intervention. But this intervention cannot take the form of subjecting the child to the stigma of a finding that he violated a criminal law and to the possibility of institutional confinement on proof insufficient to convict him were he an adult. *  *  *" 397 U.S. at 367, 90 S.Ct. at 1074.

Justice Harlan in his concurring opinion makes this statement:

"When one assesses the consequences of an erroneous factual determination in a juvenile delinquency proceeding in which a youth is accused of a crime, I think it

must be concluded that, while the consequences are not identical to those in a criminal case, the differences will not support a distinction in the standard of proof. First, and of paramount importance, a factual error here, as in a criminal case, exposes the accused to a complete loss of his personal liberty through a state-imposed confinement away from his home, family, and friends. And, second, a delinquency determination, to some extent at least, stigmatizes a youth in that it is by definition bottomed on a finding that the accused committed a crime. Although there are no doubts costs to society (and possibly even to the youth himself) in letting a guilty youth go free, I think here, as in a criminal case, it is far worse to declare an innocent youth a delinquent. I therefore agree that a juvenile court judge should be no less convinced of the factual conclusion that the accused committed the criminal act with which he is charged than would be required in a criminal trial." 397 U.S. at 373, 374, 90 S.Ct. at 1077.

■ Obviously Winship would apply only to a probation revocation involving the charging of a criminal act. In situations involving revocation for non-criminal violations we would agree with the rule announced in Juvenile J–72752, supra, holding the test of proof is the preponderance of the evidence. We would, however, have to recede from the position announced therein and in In re Maricopa County Juvenile Action No. J–66470, 19 Ariz.App. 577, 509 P.2d 649 (1973), that preponderance of evidence is the quantum of proof in a revocation hearing that alleges the commission of a crime as the basis of violation of probation. It is to be noted that under Rule 17(a)(1) of the Juvenile Court Rules of procedure the quantum beyond reasonable doubt must also be used for adjudication of incorrigibility. In the juvenile cases from which we are receding we were being guided to some extent by the reasoning in In re Anonymous, 16 Ariz.App. 597, 494 P.2d 1342 (1972)

(review denied), which justified the application of the lower standard of proof because of the fact that such is the standard of proof for revocation of an adult's probation. We believe the analysis in the article by Daniel F. Sullivan on the Standard of Proof Required for Revocation of Probation, found in Law and the Social Order, [Arizona State University Law Journal] Vol. 1973, Number Two, p. 551, on this point is well taken. This article is to the effect that the reasoning in In Re Anonymous is erroneous. He arrives at this because the Legislature has enacted juvenile statutes and the Arizona Supreme Court has passed rules which govern all matters in the Juvenile Court, which demonstrates that Arizona policy is to treat juvenile matters differently from adult criminal matters, thus the applicability of Rule 17 to a revocation proceeding should depend on the overall construction of the juvenile statutes and rules of procedure and not on statutory and case law which is primarily concerned with criminal justice for adults.

■ Getting back to the instant case, the juvenile was charged by petition alleging violation of probation by committing the criminal offense of possessing a certain automobile while knowing or having reason to believe it had been stolen, in violation of A.R.S. § 28–1423. A hearing was held where four witnesses and the juvenile testified after which the court made a finding in the language of Rule 7, Juvenile Court Rules of Procedure, that the allegations contained "in the petition are true" and by reason thereof the juvenile was in violation of his probation. We have not been cited to any rule requiring a judge in a juvenile proceeding or any other proceeding to set forth the quantum of proof he used in arriving at his decision. We can assume that the court knew the burden of proof necessary in arriving at his decision and when satisfied made the order as required in Rule 7.

■ We have studied the record to determine if there was sufficient evidence before the Juvenile Court Judge to justify

his finding. The serious conflict seems to revolve around whether the juvenile knew or had reason to believe that the car which he temporarily drove was stolen. In addition to the circumstantial evidence, there were statements by defendant which could be interpreted as admitting that he believed the car was a stolen car. For instance on cross-examination he testified:

"Q So didn't you have some idea that maybe that wasn't his sister's car?

"A Yes.

"Q So then you did think maybe it was stolen. It could have been stolen.

"A Yes."

We have studied the other questions raised by appellant and are unable to find any prejudicial error in the court's rulings which would warrant reversal.

Affirmed.

OGG, J., concurring.

STEVENS, Judge (specially concurring).

I concur in the result.

I believe that a revocation of probation and the ascertainment of the facts essential to the revocation is not part of "the adjudicatory stage" of the juvenile proceeding. The majority holds, and properly so, that probation can be revoked for non-criminal violations of the terms of probation based upon proof of those acts by a preponderance of the evidence. The majority holds that if the act which constitutes a violation of probation is a criminal act, an act of greater severity, then the proof thereof must be beyond a reasonable doubt to enable probation to be revoked. With great respect for the majority, to my mind this just does not make sense.

The majority states that it must recede from that portion of J–66470 which holds that "the quantum of proof in a revocation hearing that alleges the commission of a crime as the basis of violation of probation" is by a preponderance of the evidence. I regret, I cannot agree. In J–72752, cited by the majority, this Court followed the "preponderance of the evidence" test set forth in J–66470. There being no motion for rehearing in juvenile appeals, the petition for review is much more detailed than in other requests to review the decisions of the Court of Appeals. In the petition to review J–72752 the position now stated by the majority was set forth at length and our Supreme Court denied the petition.

I stand firm that proof of a criminal act as the basis of revocation of a juvenile's probation need only be by a preponderance of the evidence. This special concurrence is submitted with respect.